ARTHUR LAMAR ROBINSON AND RENITA ROBINSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Robinson v. Commissioner
Docket No. 13437-83.
United States Tax Court
T.C. Memo 1985-419; 1985 Tax Ct. Memo LEXIS 213; 50 T.C.M. (CCH) 754; T.C.M. (RIA) 85419; August 13, 1985. *213 Held: Petitioner's employment as a steamfitter-welder assignee was indefinite. Thus, a deduction for expenses to travel to and from work is not allowable under section 162(a)(2). Arthur Lamar Robinson, pro se. Helen Theo, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined a deficiency in petitioners' income tax of $1,745 for 1980. After concessions, the only issue for decision is whether petitioners are allowed *214 to deduct expenses incurred in 1980 for travel to and from work under section 162(a)(2). [1]
FINDINGS OF FACT Some of the facts have been stipulated. Petitioners resided in Cedar Bluff, Alabama, when they filed the petition in this case. During the year in issue petitioners lived in Rome, Georgia. Petitioner Arthur Lamar Robinson (petitioner) is a steamfitter by trade. On April 5, 1979, petitioner began to work as a steamfitter-welder assignee for the Tennessee Valley Authority (TVA) at the Bellefonte Nuclear Project (Bellefonte project) in Hollywood, Alabama. [2] An assignee lacks the qualifications of a journeyman, but has at least minimum skills to do work in the particular specialty for which hired. The TVA hired assignees at the Bellefonte project because of a shortage of available journeymen steamfitter-welders. A steamfitter-welder is a specialty within the steamfitter trade, in that both steamfitters and steamfitter-welders are members of and represented by the same *215 union but they are separate classifications of skills, although in the same pay scale. When petitioner was employed by TVA, his type of appointment was a Trades and Labor Temporary Construction Hourly, with no termination date. Workers under this appointment were employed until their services were no longer needed. The word "temporary" was used by TVA to distinguish hourly workers from salaried workers. Petitioner was hired under the special conditions that as an assignee, he would be laid off before non-assignees and he would be terminated when qualified candidates became available. Because of these conditions, his duties were restricted. [3]
On January 20, 1981, petitioner qualified for and was designated as a journeyman steamfitter-welder which gave him seniority over steamfitter-welder assignees. Petitioner resigned his employment with TVA on July 24, 1981. On September 2, 1981, petitioner *216 resumed his position at the Bellefonte project as a journeyman steamfitter-welder on an hourly basis with no termination date. Petitioner remained employed until October 3, 1983, when TVA terminated petitioner's employment because of a reduction in force. The requirements at the Bellefonte project for steamfitters [4] for the year 1980, as projected in 1979, were 800 although 1,416 were actually employed. The requirements for the year 1981, as projected in 1980, were 146 although 1,506 were actually employed. During 1980, 132 steamfitter-welder assignees were employed and out of that number only 39 were laid off. We take judicial notice of the following facts found in , which also involved the Bellefonte project. The Bellefonte project in 1978 had a projected completion date of 1983. This completion was revised as follows: [5]
Time of Revised Projection
Revised Projected Completion Date
April 1979
August 1985
May 1980
August 1986
*217 Housing in the Bellefonte project area for workmen was critically short during this period. During 1980, petitioner drove from his residence in Rome, Georgia, to the Bellefonte project on a daily basis. The distance between the two is 75 miles and thus, a round trip is 150 miles. On their return for the 1980 taxable year, petitioners claimed automobile expenses as an employee business expense deduction in the amount of $5,767, based upon the mileage driven. This decuction was disallowed by respondent. OPINION Respondent argues that petitioner is not entitled to deduct the expenses at issue because (1) the expenses were not incurred "while away from home"; (2) petitioner's residence in Georgia was maintained for personal rather than business reasons; and (3) petitioner's employment by TVA was indefinite rather than temporary. Personal expenses are ordinarily not deductible. Section 262. Section 162(a)(2), however, allows the taxpayer to deduct certain expenses if they are traveling expenses paid or incurred while "away from home in the pursuit of *218 a trade or business" if he can establish they were: (1) Reasonable and necessary traveling expenses; (2) incurred while "away from home"; and (3) incurred in pursuit of a trade or business. ; . This Court has held that a taxpayer's "home" for the purposes of section 162(a)(2) is the vicinity of his principal place of business whenever his personal residence is not located in the same vicinity. ; . There is however an exception to this rule when a taxpayer with a well-established tax home accepts temporary employment as opposed to indefinite or indeterminate employment elsewhere. In this context, temporary employment means the sort of employment in which termination within a short period of time could be logically expected and foreseen. , affg. a Memorandum Opinion of this Court; . See also . *219 On the other hand, whenever termination of employment cannot be expected or foreseen within a fixed or reasonably short period of time, the taxpayer's tax home shifts to such place of employment so that he cannot satisfy the "away from home" requirement. . Furthermore, when employment which was temporary in contemplation at the date of its commencement becomes indeterminate in duration, then "the situs of such employment for purposes of the statute becomes the taxpayer's home." . Employment may change from temporary to indefinite due to changed circumstances or simply by the passage of time. . Whether a taxpayer's employment is "temporary" as opposed to "indefinite," "substantial," or "permanent" is a question of fact. ; ;Among the relevant factors to be considered is whether the taxpayer logically expected that the employment would last *220 for a short period of time or that the job itself would not extend beyond a reasonably brief duration. The burden of proving that his employment was temporary rests on petitioners. ; Rule 142(a). In the present case it is clear that during 1980 termination of petitioner's employment on the Bellefonte project could not be logically expected or foreseen within a fixed or reasonably short period of time. The contract of employment provided that petitioner would be employed until his services were no longer needed. The fact that petitioner's contract stated that he was a temporary employee is not determinative of the issue herein. ; . We understand the confusion caused by the fact that the meaning of the word "temporary" in petitioner's contract is different from the meaning of the word "temporary" as a term of art for business expense purposes under section 162. In view of the extensive judicial precedent on this tax issue, petitioners must look to the Congress *221 for establishment of a different rule. In fact, petitioner resigned his employment with TVA in July 1981 only to resume such employment in September 1981. The projected completion date for the Bellefonte project was continuously revised and extended into the future. There was no reason to believe during 1980 that the job would not extend indefinitely into the future. The fact that a relatively small number of steamfitter-welder assignees were laid off during the year in issue does not lead us to conclude that petitioner's job would terminate within a short period of time by reason of being laid off. Although journeymen steamfitter-welders had senority over petitioner, as long as his status as an assignee continued, the requirements for this trade exceeded the number of journeymen available for employment. In fact petitioner's job continued into the year 1983. Neither is it relevant that it may not have been reasonable for petitioner to have acquired a permanent residence in the area of the Bellefonte project if one could have been located. It is clear from the record that during 1980 petitioner's employment was indefinite. *222 Petitioner has not met the "away from home" requirement; hence petitioner's travel expenses are not deductible under section 162(a)(2). [6]
Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
2. This is one of a group of six cases involving hourly workmen at the bellefonte project, all of whose cases were consolidated for trial only.↩
3. To be employed as a steamfitter-welder, petitioner was required to pass a test and be certified by TVA and the Nuclear Regulatory Commission.↩
4. We assume that for purposes of these statistics the term "steamfitters" includes "steamfitter-welders." However, the more pertinent statistic is with respect to assignees, more being hired during 1980 than terminated.↩
5. Although the completion dates have been revised, no reactors have been deferred or cancelled at the Bellefonte plant.↩
6. Our attention was called to two summary opinions, Cook v. Commissioner, T.C. Summary Opinion 1980-752, and Atnip v. Commissioner,↩ T.C. Summary Opinion 1980-761, which petitioners believe to have involved employment on the Bellefonte project. In each case the taxpayers were allowed travel expense deductions. Neither opinion sets forth the facts of the particular case so we cannot compare those cases to any of this group of six cases. However, those were summary opinions and they are not precedent for any other case, although we of course recognize that all of our opinions should be consistent.